**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Kamau, | No. CV-25-02863-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Hamid R Ertifai, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff John Kamau's application to proceed in forma pauperis ("IFP"), (Doc. 2), and emergency motion for a temporary restraining order ("TRO") and preliminary injunction ("PI"), (Doc. 7). For the reasons explained below, Kamau's application to proceed IFP is denied, Kamau's Complaint is dismissed without prejudice, and the motion for TRO and PI is dismissed as moot.

## I.   BACKGROUND

On August 11, 2025, Kamau filed this action. (Doc. 1.)

In the Complaint, Kamau alleges that the basis for the Court's subject matter jurisdiction is "FRCP 65"; he did not check the box for federal question or diversity jurisdiction. (*Id.* at 3.) Kamau also does not allege any specific causes of action, instead generally alleging that the defendants are money lenders who engaged in predatory behavior and, when Kamau "fell in to hard times," he was "forced to file bankruptcy." (*Id.* at 4.) Kamau requests a TRO and PI to "Order a stop to a Trustee Sale" scheduled for August 19, 2025, which Kamau asserts is in violation of the automatic stay under the

Bankruptcy Code, 11 U.S.C. § 362. (*Id.* at 5.)

The same day, Kamau filed the IFP application and motion for TRO and PI. (Docs. 2, 7.)

## II.   IFP APPLICATION

Before turning to Kamau's Complaint, his request to proceed IFP in this case must first be addressed. "There is no formula set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status." *Escobedo v. Applebees*, 787 F.3d 1226, 1235 (9th Cir. 2015). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Id.* at 1234 (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). Although an applicant "need not be absolutely destitute to obtain benefits of the in forma pauperis statute," a "plaintiff seeking IFP status must allege poverty with some particularity, definiteness and certainty." *Id.* (quotation marks omitted).

Having reviewed the application to proceed IFP, (Doc. 2), the application is denied. First, Kamau did not properly complete the application. The application instructed Kamau to "not leave any blanks" and to "[c]omplete all questions in this application." (*Id.* at 1.) Kamau left most of the questions blank: he identified an average monthly income from the past 12 months but did not include information for any income expected next month, and he did not include his employment history or information for any financial accounts and any amounts contained therein. (*See id.* at 1–2.) Moreover, although Kamau stated that he "expect[ed] . . . major changes to [his] monthly income or expenses in [his] assets or liabilities during the next 12 months," he did not follow the application's instructions to "describe on an attached sheet" what these major changes would be. (*Id.* at 5.) Kamau's failure to properly complete the application does not permit a thorough analysis of whether Kamau has enough income or assets, as compared to expenses, to warrant IFP status. *See, e.g.*, *Burns v. Gore*, 2025 WL 1908400, at *1–2 (S.D. Cal. 2025) (denying IFP application in part because of the "lack of detail Plaintiff provide[d] regarding his income and expenses," including the plaintiff leaving several sections of the application blank).

Second, what little Kamau did complete in the application weighs against granting IFP status. Kamau's average monthly income over the past year amounts to $93,600. (*See* Doc. 2 at 1–2.) Although Kamau disclosed that he has two daughters who rely on him for support, he only disclosed the age of one of his daughters, who is 17, so it is unclear whether both are minor dependents. (*See id.* at 3.) Kamau owns real property valued at $700,000 and (presumably) $1.9 million, respectively. (*See id.*)[1] He also owns a 2019 Cadillac Escalade valued at $45,000. (*Id.*) Although Kamau states that his monthly expenses total $22,500, (*id.* at 5), it is unclear whether all these expenses constitute the "necessities of life," *Escobedo*, 787 F.3d at 1234. For example, although Kamau's rent or mortgage payment is listed as $13,000 per month, Kamau disclosed that he owns at least two properties, suggesting that at least some of the listed $13,000 rent/mortgage expenses pertain to a separate property than Kamau's home. (*See* Doc. 2 at 3–4.) The same analysis applies to the $5,000 in utilities expenses Kamau disclosed. (*See id.* at 4.)

Ultimately, although the disclosed monthly expenses are greater than the disclosed monthly income, it does not appear that all of the disclosed monthly expenses fall within the "necessities of life" that justify IFP status. *See Valentine v. Granville Realty, Inc.*, 2025 WL 1839935, at *2 (E.D. Cal. 2025) ("Courts have consistently held that IFP status should not be granted where an applicant can pay the filing fee with *acceptable sacrifice* to other expenses." (emphasis added)). The filing fee amounts to approximately 5% of Kamau's average monthly income over the past year. (*See* Doc. 2 at 2.) Kamau's significant assets and monthly income over the past year show that he is not indigent and thus can afford the $405 filing fee. *See, e.g.*, *Tod M. v. Kijakazi*, 2021 WL 6622288, at *1 (S.D. Cal. 2021) (denying IFP application where the plaintiff indicated he had "assets including a home valued at $250,000, a vehicle valued at $1,500, and a second vehicle valued at $1,200"). Simply because a person lives above their means—as Kamau's income compared to his expenses implies, given the extremely high expenses for rent/mortgage and utilities—does not mean that the person "cannot pay . . . court costs and still afford the necessities of life."

---

[1] In the box for the value of Kamau's home, he put "$1.90." (Doc. 2 at 3.)

*See Escobedo*, 787 F.3d at 1234; *see also Berner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 3246978, at *1 (D. Ariz. 2023) (noting that, although *Escobedo* could be read to hold that if the applicant's "rent and debt payments exceed her income, Plaintiff is eligible for in forma pauperis status," this reading would, "taken to its extreme . . . mean someone earning millions of dollars per year would qualify for in forma pauperis status as long as they are spending more than they earn"); *Thistle v. Arkansas*, 2022 WL 867009, at *2 (S.D. Cal. 2022) (denying IFP application where the plaintiff's monthly income was $4,620.00 and, "[a]lthough Plaintiff . . . elected to pay a substantial portion of his income toward a monthly mortgage payment, given [his] level of income, it appear[ed] he [was] financially able to pay the Court costs").

As the court in *Berner* reasoned, there is nothing to indicate that Kamau cannot pay the filing fee "without forgoing eating like the plaintiff in *Escobedo*." *See* 2023 WL 3246978, at *2. Kamau has not established his poverty with certainty, *Escobedo*, 787 F.3d at 1234, and the IFP application is thus denied.

### III.   COMPLAINT AND MOTION FOR TRO/PI

Although Kamau's IFP application is denied for the reasons explained above, he will not be given the ability to pay the filing fee to allow this action to proceed because his Complaint is dismissed.

"Federal courts are courts of limited jurisdiction." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears," *Stock W., Inc. v. Confederated Tribes of the Colvill Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989), and the "party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Furthermore, even if a party does not challenge subject matter jurisdiction, federal courts have an "independent obligation to examine their own jurisdiction." *United States v. Hays*, 515 U.S. 737, 742 (1995). Additionally, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid," courts must dismiss a case if it "fails to state a claim on which relief may be granted."

1    28 U.S.C. § 1915(e)(2)(B)(ii).

2        The sole basis Kamau provides for this Court's jurisdiction is Rule 65, but none of the Federal Rules of Civil Procedure confer subject matter jurisdiction. Fed. R. Civ. P. 82 ("These rules do not extend . . . the jurisdiction of the district courts . . . ."); *Kurth v. Holston*, 2012 WL 1900948, at *3 (D. Nev. 2012) ("Rule 65 is not an independent basis of jurisdiction."). Diversity jurisdiction does not exist because the Complaint discloses that all parties are citizens of Arizona. (*See* Doc. 1 at 1, 3.) *See* 28 U.S.C. § 1332(a)(1) (providing for jurisdiction over actions between "citizens of different States"). Kamau does not identify any other basis for subject matter jurisdiction, or any statutory or constitutional source for his claims, so the Complaint should ordinarily be dismissed. *See In re Hunter*, 66 F.3d 1002, 1005 (9th Cir. 1995) ("For a federal court to have subject matter jurisdiction to hear an independent action there must be some statutory or constitutional basis for its jurisdiction."); *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir. 1974) ("It has long been held that a judge can dismiss sua sponte for lack of jurisdiction.").

       Because Kamau is pro se, the Complaint must be liberally construed in determining whether subject matter jurisdiction exists. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), *overruled on other grounds by Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977, 980–81 (9th Cir. 2024). Construing Kamau's Complaint liberally, Kamau asserts a claim for violation of the automatic stay under 11 U.S.C. § 362. (Doc. 1 at 4.) As alleged in the Complaint and further explained in the motion for TRO and PI, the parties are involved in a bankruptcy case, with case number 25-03815-EPB. (*See* Doc. 1 at 4 (alleging the "Plaintiff was forced to file bankruptcy"), 5 (requesting a stop to a trustee sale and arguing the sale violates the automatic stay in the Bankruptcy Court); Doc. 7 at 2 ("Defendant and their respective entities are parties in a bankruptcy case. 25-03815-EPB[.]"); *id.* (arguing that, in "total violation[] of the Automatic stay . . . offered in the Bankruptcy case," the defendants "have [on] several occasions commenced sale of the residential property").)

       The crux of Kamau's Complaint and motion for TRO and PI is thus that the

defendants have violated or are violating the automatic stay in a pending bankruptcy action. The Court would have subject matter jurisdiction over such a claim. *See Houck v. Substitute Tr. Servs.*, 791 F.3d 473, 481 (4th Cir. 2015). Because this District has referred all cases arising under the Bankruptcy Code to the Bankruptcy Court, however, Kamau must raise any complaints about an alleged violation of the automatic stay before the Bankruptcy Court. *See* 28 U.S.C. § 157; Gen. Order 01-15 (referring "all cases under title 11 and all proceedings under title 11 or arising in or related to a case under title 11" to the Bankruptcy Court). Thus, even construing the Complaint as asserting a claim under the Bankruptcy Code, it is dismissed without prejudice to Kamau raising his claim before the Bankruptcy Court. The motion for TRO and PI is therefore dismissed as moot.

Accordingly,

**IT IS ORDERED** that Kamau's IFP application (Doc. 2) is **denied**.

**IT IS FURTHER ORDERED** that the Complaint is **dismissed without prejudice** to Kamau raising any claims arising under the Bankruptcy Code to the Bankruptcy Court.

**IT IS FURTHER ORDERED** that the motion for TRO and PI (Doc. 7) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 14th day of August, 2025.

_____
Honorable Sharad H. Desai
United States District Judge